IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Christopher Shill, Emily Shill, Individually, and as Next of Kin to minor, B.S., and as Next of Kin to minor, O.S., <br><br> Plaintiffs, <br><br> vs. <br><br> Coastal Association Management, Inc., Sea Cabin on the Ocean IV Homeowners Association, Inc., and John Doe I-X, <br><br> Defendants. | Case No.: 4:23-cv-06351-JD <br><br> **MEMORANDUM ORDER AND OPINION** |

This premises liability action arises from an August 4, 2023, collapse of an exterior stairwell at the Sea Cabin on the Ocean IV condominiums in Horry County, South Carolina. Before the Court are defense motions for summary judgment. (DE 41; DE 42.)

Defendant Sea Cabin on the Ocean IV Homeowners Association, Inc. ("Sea Cabin" or the "HOA") moves for summary judgment, asserting, among other things, that no genuine issue of material fact exists because Plaintiffs were licensees, the HOA breached no duty under South Carolina law, and the undisputed evidence shows the HOA's Board acted reasonably. (DE 42.) Plaintiffs Christopher and Emily Shill, individually and as next of kin to their minor children (collectively, "Plaintiffs"), oppose the motion, arguing that genuine disputes of material fact remain regarding Plaintiffs' status and the HOA's notice of the alleged dangerous condition. (DE 43.) Sea Cabin has filed a reply. (DE 45.)

1

Defendant Coastal Association Management, Inc. ("Coastal Management") also moves for summary judgment, arguing, among other things, that it owed no independent duty to Plaintiffs because it did not own the premises and lacked control over the stairwell, and further asserting that the record contains no evidence of actual or constructive notice of an imminent structural failure. (DE 41.) Plaintiffs oppose that motion as well. (DE 44.)

For the reasons below, Defendants' motions for summary judgment (DE 41; DE 42) are denied.

## I.  BACKGROUND

### A.  Factual Background

Sea Cabin on the Ocean IV is a horizontal property regime consisting of approximately 150 condominium units located in Horry County, South Carolina. Defendant Sea Cabin on the Ocean IV Homeowners Association, Inc., is a South Carolina nonprofit corporation responsible for maintaining the property's common elements, including exterior stairways. (DE 1 ¶ 3; DE 43-1 at 3, Stanley 30(b)(6) Dep. 27:5–12.) The HOA is governed by a volunteer board of directors ("Board"). (DE 42 at 2.)

Defendant Coastal Association Management, Inc. ("Coastal Management"), serves as the HOA's professional property management company pursuant to a written Management Agreement. (DE 41-1 at 2–4.) Coastal Management employs an on-site maintenance individual who reports maintenance issues to Coastal Management and the Board and functions as the Board's primary on-site point of

observation regarding conditions on the property. (DE 44 at 7; DE 44-4 at 17–18, Stanley 30(b)(6) Dep. 120:2–121:1.)

The stairway at issue is located on the oceanside end of Building C. It is an exterior wooden structure comprising framing members, stringers, and railings, and forms part of the common elements maintained by the HOA. (DE 43-1 at 3, Stanley 30(b)(6) Dep. 27:5–12.) The stairway provides access to second-floor units, including the unit rented by Plaintiffs during the week of August 4, 2023.

Plaintiffs Christopher and Emily Shill, residents of North Carolina, rented the unit through Airbnb from a private unit owner. (DE 1 ¶ 1; DE 42-1 at 2, C. Shill Dep. 21:13–23.) On the evening of August 4, 2023, at approximately 10:13 p.m., Plaintiffs were ascending the Building C stairway while each carrying one of their minor children. (DE 1 ¶ 9.) As they approached the second-floor landing, the stair structure collapsed beneath them. (*Id.*) All four Plaintiffs fell to the landing below and sustained injuries. (DE 1 ¶¶ 9–11.)

Before the incident, the HOA had engaged professional engineers to evaluate the condition of the property's stairways. In 2018 and 2019, engineer Timothy Donohue inspected the stair structures and identified various structural issues affecting the stairways, including concerns regarding stringer bearing and alignment, and recommended additional investigation and eventual reconstruction of certain stair components. (DE 43-4 at 3–6, 7–8, Donohue Dep. 31:16–31:25, 33:19–36:4, 42:23–43:7; DE 43-2.)

The HOA also retained the engineering firm Giles-Flythe to prepare reserve studies addressing long-term capital planning for the property. A reserve study prepared in 2020 projected future repair and replacement timelines for various common elements, including the stairways associated with Building C. (DE 43-3 at 5–6, 16–17, Giles Dep. 31:4–32:9, 73:12–74:1.)

The Board maintained a capital reserve account and undertook phased replacement of certain stairways and other common elements over time. (DE 42 at 6–7.) According to Defendants, none of the engineers who inspected the property before August 2023 advised the Board that the Building C stairway posed an imminent risk of collapse. (DE 41-2 at 7, 10, 13–14, Donohue Dep. 32:1–18; 51:1–3; 91:21–92:1.)

Plaintiffs contend that prior engineering reports and inspections identified deterioration affecting the stair structures and that the condition of the Building C stairway had progressively worsened in the years preceding the collapse. Plaintiffs also point to testimony and documentary evidence showing that structural deformation and sagging were observable before the incident. (DE 43-8.)

Following the collapse, the HOA implemented additional inspections and safety-related work involving other stair structures on the property. This action followed, with Plaintiffs asserting claims for negligence and premises liability against both Sea Cabin and Coastal Management based on alleged failures to inspect, repair, warn of, or restrict access to the stairway before its collapse.

**B.    Procedural Background**

Plaintiffs Christopher Shill and Emily Shill, individually and as next of kin to their minor children, commenced this action on December 7, 2023, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. (DE 1.) The Complaint asserts claims sounding in negligence and related theories of liability against Defendants Coastal Management, Sea Cabin, and unidentified John Doe defendants. (*Id.*)

Sea Cabin filed its Answer on May 3, 2024. (DE 9.) Coastal Management filed its Answer and asserted a crossclaim against Sea Cabin on May 6, 2024. (DE 12.) Sea Cabin thereafter filed a reply to the crossclaim. (DE 15.)

A Scheduling Order was entered establishing deadlines for discovery, expert disclosures, mediation, and dispositive motions. (DE 10.) The parties thereafter conducted written discovery, depositions, and expert discovery pursuant to that Order.

Following the close of discovery, Coastal Management filed a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. (DE 41.) Sea Cabin likewise filed a Motion for Summary Judgment. (DE 42.) Plaintiffs filed memoranda in opposition to both motions. (DE 43; DE 44.) Sea Cabin filed a reply in further support of its motion. (DE 45.)

The motions are fully briefed and ripe for disposition.

## II.  LEGAL STANDARD

**Summary Judgment Under Rule 56, Fed. R. Civ. P.**

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 322. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). If the burden of proof at trial would be on the nonmoving party "a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp.*, 477 U.S. at 324. "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied[] . . . ." *Id.* at 332.

6

Accordingly, once the movant has made this threshold demonstration, to survive the motion for summary judgment, under Rule 56(e), the nonmoving party must "go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citation omitted). Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Cts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting another source). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 659–60.

### III.  DISCUSSION

Under South Carolina law, the duty a landowner owes to a person entering the premises depends on the entrant's legal status. *See Sims v. Giles*, 343 S.C. 708, 716–21, 541 S.E.2d 857, 862–64 (Ct. App. 2001). A business invitee is one who enters the property "by express or implied invitation" in connection with the owner's business or where there is a mutuality of benefit between the parties. *Id.* at 716–17, 541 S.E.2d at 862. A licensee, by contrast, enters the property with the owner's permission but primarily for the visitor's own purposes or benefit. *See Hoover v. Broome*, 324 S.C. 531, 535, 479 S.E.2d 62, 64 (Ct. App. 1996).

When a plaintiff qualifies as a business invitee, the landowner owes a duty to exercise reasonable or ordinary care to maintain the premises in a reasonably safe condition and to warn of latent or hidden dangers of which the landowner has actual or constructive knowledge. *See Wintersteen v. Food Lion, Inc.*, 344 S.C. 32, 35–37, 542 S.E.2d 728, 729–31 (2001). By contrast, a landowner owes a licensee a more limited duty—to refrain from willfully or wantonly injuring the licensee and to warn the licensee of concealed dangerous conditions actually known to the landowner. *Neil v. Byrum*, 288 S.C. 472, 473, 343 S.E.2d 615, 616 (1986).

In either circumstance, liability turns on whether the defendant knew or reasonably should have known of the dangerous condition and failed to act with the degree of care required under the circumstances. *See Larimore v. Carolina Power & Light Co.*, 340 S.C. 438, 447, 531 S.E.2d 535, 540 (2000) (explaining that constructive notice may arise where a dangerous condition existed for a sufficient period of time

that the defendant should have discovered and remedied it through the exercise of reasonable care).

With these principles in mind, the Court considers whether the summary judgment record permits resolution of Defendants' motions as a matter of law.

## A.    Sea Cabin's Motion for Summary Judgment

Sea Cabin advances several arguments in support of summary judgment. (DE 42.) First, it contends that the undisputed evidence demonstrates that its Board of Directors acted reasonably and in accordance with accepted industry standards for the governance and maintenance of common-interest communities. (DE 42 at 8.) Sea Cabin relies in part on the opinion of its industry-standards expert, Jeffrey M. Evans (*id*. at 4) and argues that Plaintiffs have produced no expert testimony establishing a breach of the applicable standard of care (*id*. at 5).

Second, Sea Cabin argues that Plaintiffs were licensees rather than business invitees because they rented a privately owned condominium unit from an individual owner through Airbnb and conferred no economic benefit on the HOA. (DE 42 at 8–9.) Under this theory, the HOA owed Plaintiffs only the limited duty applicable to licensees under South Carolina law. (*Id*. at 10.)

Third, Sea Cabin contends that even if Plaintiffs were considered business invitees, the record contains no evidence that the HOA had actual or constructive notice of a structural defect presenting a risk of collapse. (DE 42 at 13.) Sea Cabin emphasizes that professional engineers inspected the stairways before the incident and did not identify any imminent life-safety hazard. (*Id*.)

### 1.    Plaintiffs' Status: Licensee or Invitee

Sea Cabin argues that Plaintiffs were licensees because they rented a privately owned condominium unit through Airbnb from an individual unit owner rather than directly from the HOA. (DE 42 at 9; DE 42-1 at 2, C. Shill Dep. 21:13 – 23.) According to Sea Cabin, any economic benefit associated with the rental transaction accrued to the unit owner rather than the association, and Plaintiffs, therefore, entered the common areas primarily for their own benefit.

Plaintiffs contend they should instead be treated as business invitees. They point to evidence that the Sea Cabin property was routinely used for short-term rentals and that such rentals were permitted within the condominium regime. (DE 43 at 14; DE 43-5 at 2, Harm Dep. 49:3–20.) Plaintiffs argue that guests renting units at the property—including Airbnb guests—constitute part of the anticipated and ordinary use of the premises, and therefore, enter the property by implied invitation. (DE 43 at 16–19.)

Under South Carolina law, a business invitee is one who enters the premises in connection with the owner's business or for the parties' mutual benefit. *Sims v. Giles*, 343 S.C. 708, 716–17, 541 S.E.2d 857, 862 (Ct. App. 2001). Because the duty owed by a landowner depends on the entrant's status, a landowner owes invitees a duty to exercise reasonable or ordinary care for their safety. *Id*.

At the summary judgment stage, however, the Court need not definitively resolve Plaintiffs' precise legal status. Even assuming Plaintiffs qualify as business invitees, and therefore, are owed the broader duty of reasonable care, Sea Cabin

would still be entitled to summary judgment only if the record demonstrates that no reasonable jury could find that the association breached that duty.

Because the Court concludes that genuine disputes of material fact exist regarding Sea Cabin's knowledge of the stairway's deteriorating condition and the adequacy of its response to that information, the Court will analyze the record under the more demanding invitee standard for purposes of the present motion.

### 2.    Notice and Breach

A possessor of land owes business invitees a duty to exercise reasonable or ordinary care for their safety and to keep the premises in a reasonably safe condition. *Wintersteen v. Food Lion, Inc.*, 344 S.C. 32, 35–37, 542 S.E.2d 728, 729–31 (2001). Although a landowner is not an insurer of invitees' safety, liability may arise where the defendant creates the dangerous condition or has actual or constructive notice of it and fails to remedy the condition. *Id.*

Sea Cabin argues the record contains no evidence that it had actual or constructive notice of an imminent structural failure in the stairway. In support of this position, Sea Cabin points to evidence that:

- professional engineers had inspected the stairways in prior years;

- engineering and reserve planning documents projected replacement of the Building C stairway in 2025 as part of a long-term capital plan;

- no engineer warned the Board that the stairway posed an imminent collapse risk; and

- the HOA maintained reserve funds and undertook phased replacement of common elements over time.

11

(DE 42 at 6–7; DE 34-1 at 12–13, 17–18; DE 42-3 at 5, Stanley Dep. 118:7 – 17; DE 42-5 at 8–9, C. Harm Dep. Rule 30(b)(6) deponent for Coastal, 196:6 – 197:8.) Sea Cabin argues these actions demonstrate that the Board acted reasonably and relied on professional engineering guidance in managing the property's structural components.

Sea Cabin further relies on expert testimony regarding condominium governance and industry practice. Its industry-standards expert opines that the Board's conduct—including commissioning engineering evaluations, conducting reserve studies, and planning phased capital replacements—was consistent with accepted practices in the management of common-interest communities. (DE 34-1 at 9–10, 10–18.)

Evidence of industry safety standards may be relevant in determining the applicable standard of care. *See Elledge v. Richland/Lexington Sch. Dist. Five*, 352 S.C. 179, 186, 573 S.E.2d 789, 793 (2002). However, compliance with industry practice does not necessarily establish due care when other evidence could permit a jury to find that additional precautions were required under the circumstances.

Plaintiffs identify evidence from which a jury could draw a different inference regarding the HOA's knowledge of the stairway's condition. In particular, Plaintiffs point to evidence that:

- Engineering inspections identified structural defects and deterioration affecting the stair towers, including inadequate stringer bearing, alignment issues, and lateral drift requiring reconstruction or further exploration. (DE 43-2, DE 43-4 at 2, 3–6, 7–8, Donohue Dep. 31:16–31:25, 33:19–36:4, 42:23–43:7; DE 43-1 at 8, Stanley 30(b)(6) Dep. 46:10–21.)

12

- The Building C stairway was decades old and nearing or exceeding its projected service life, supporting an inference that additional inspection or replacement planning was warranted. (DE 43-1 at 3, 7, Stanley 30(b)(6) Dep. 27:5–27:23, 31:1–12; DE 43-3 at 11, Giles Dep. 50:1–22.)

- Reserve planning documents and updates acknowledged deterioration and the need for replacement of structural components, while proposing replacement of Building C within the HOA's multi-year capital plan. (DE 43-3 at 5, 17, DE 43-3 at 5–6, 16–17, Giles Dep. 31:4–32:9, 73:12–74:1; DE 43-1 at 22, Stanley 30(b)(6) Dep. 78:1–22.)

- No additional structural inspection of the Building C stairway occurred after the 2019 engineering evaluation and before the August 2023 collapse; and witnesses observed visible bowing or deformation in the stair structure before the incident. (DE 43-1 at 9–11, Stanley 30(b)(6) Dep. 47:11–49:20; DE 43-4 at 2, Donohue Dep. 31:11–15.)

- Residents reported observable sagging or structural irregularities in the stairway before the incident, including an email reporting that the steps appeared to be "sagging" and had been poorly repaired. (DE 43-8.)

Sea Cabin emphasizes that none of the engineering reports expressly warned of an imminent risk of collapse. Plaintiffs respond that the combination of documented deterioration, the age of the structure, and the absence of more recent structural inspection could support a finding that additional investigation or interim safety measures were warranted before the planned replacement date.

Viewing the evidence in the light most favorable to Plaintiffs—as the Court must at the summary judgment stage—a reasonable jury could conclude that Sea Cabin had constructive notice that the stair structure had materially deteriorated and required further inspection, repair, or interim safety measures.

The record, therefore, presents competing inferences regarding what Sea Cabin knew, or reasonably should have known, about the condition of the stairway

13

and whether its response to that information satisfied the duty of reasonable care owed to persons using the premises.

Resolving those competing inferences would require the Court to weigh the credibility of witnesses and evaluate the relative persuasiveness of the parties' expert testimony—tasks that are reserved for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

### 3.    HOA Director Reliance on Expert Advice

Sea Cabin also argues that it cannot be found negligent because its Board relied on professional engineers, reserve specialists, and property management professionals in evaluating the property's condition. Sea Cabin further contends that Plaintiffs' claims fail as a matter of law because Plaintiffs have not presented expert testimony addressing the applicable industry standards governing the operation of common-interest communities.

South Carolina law recognizes that directors of nonprofit corporations— including homeowners' associations—may rely on information, opinions, or reports prepared by qualified professionals in discharging their duties. *See* S.C. Code Ann. § 33-31-830(b). Such reliance may be relevant in determining whether directors acted in good faith and with the care an ordinarily prudent person would exercise under similar circumstances.

However, the statutory provision governing director conduct does not displace the ordinary principles of negligence that govern premises-liability claims brought by third parties. An association that controls and maintains common elements may be

14

held liable in tort for failing to exercise reasonable care in maintaining those areas. *See Murphy v. Yacht Cove Homeowners Ass'n,* 289 S.C. 367, 345 S.E.2d 709 (1986).

Sea Cabin's reliance on the opinions of its industry-standards expert and on the absence of a competing governance expert likewise does not entitle it to judgment as a matter of law. Expert testimony is required only when the subject matter of a claim is beyond the common knowledge of lay jurors. *See Green v. Lilliewood,* 272 S.C. 186, 192–93, 249 S.E.2d 910, 913 (1978). While expert testimony may assist a jury in understanding specialized matters relating to property management practices, the core question here—whether the association exercised reasonable care in addressing the condition of a deteriorating exterior stairway—is not inherently beyond the understanding of a lay jury.

The record also contains evidence that engineers retained by the HOA identified deterioration affecting the stair structures and recommended further investigation or eventual replacement. (DE 43-2; DE 43-4 at 3–6, 7–8, Donohue Dep. 31:16–31:25, 33:19–36:4, 42:22–43:7; DE 43-1 at 8, Stanley 30(b)(6) Dep. 46:10–21.) Plaintiffs also point to evidence concerning the stairway's age, the timing of inspections, and the association's reliance on reserve-study projections that were not intended to evaluate life-safety risks. (DE 43-1 at 3, 7, 9–11, Stanley 30(b)(6) Dep. 27:5–27:23, 31:1–12, 47:11–49:20; DE 43-3 at 5–6, 16–17, Giles Dep. 31:4–32:9, 53:22–54:7, 73:12–74:1.) From this evidence, a jury could reasonably infer that additional inspection, repair, or interim safety measures were warranted before the planned replacement date.

Sea Cabin emphasizes that none of the engineers involved in prior inspections warned the Board that the stairway posed an imminent risk of collapse. That evidence may ultimately support Sea Cabin's defense at trial. At the summary judgment stage, however, the Court must view the record in the light most favorable to Plaintiffs and may not weigh competing expert opinions or determine which interpretation of the evidence is more persuasive.

Accordingly, although the Board's reliance on professional evaluations and reserve planning may be relevant to the ultimate determination of negligence, the present record does not establish as a matter of law that such reliance eliminates any potential breach of duty.

In sum, Sea Cabin's motion rests on three theories: that Plaintiffs were licensees, that the HOA lacked notice of any dangerous condition, and that the Board's reliance on professional advice and industry practices establishes reasonable conduct as a matter of law. Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that genuine disputes of material fact exist regarding the HOA's actual or constructive notice of the stairway's condition and the reasonableness of its response. These disputes must be resolved by a jury.

**B.    Coastal Management's Motion for Summary Judgment**

Coastal Management separately moves for summary judgment, arguing that Plaintiffs cannot establish that Coastal Management owed or breached any duty of care. (DE 41 at 8.) Coastal Management contends that it did not own the premises and that its role was limited to administrative and operational property management

16

functions performed on behalf of the HOA pursuant to a management agreement. (*Id.* at 9–10.) According to Coastal Management, the HOA retained ultimate authority over structural repairs and capital improvements—including the timing and scope of stairway replacement—and Coastal Management lacked authority to undertake such work without Board approval except in limited emergency circumstances. (*Id.* at 10.)

Coastal Management further argues that the record contains no evidence that it had actual or constructive notice of a condition posing an imminent risk of collapse and that Plaintiffs have presented no expert testimony establishing that Coastal Management violated any applicable property-management standard of care. (*Id.*)

Plaintiffs respond that Coastal Management exercised operational control over the day-to-day maintenance and inspection of the property and, therefore, assumed responsibilities related to the safety of the common areas. (DE 44 at 16; see also DE 44-1; DE 44-4 at 17–18, Stanley 30(b)(6) Dep. 120:2-121:1; DE 44-2 at 3–4, Harm 129:1-130:14.) Plaintiffs argue that Coastal Management's contractual duties, its supervision of on-site personnel, and its communications with engineers and the HOA Board create triable issues regarding both duty and breach.

The Court addresses these issues in turn.

### 1.    Duty of a Property Manager

Under South Carolina law, a party that does not own property may nevertheless owe a duty of reasonable care where it voluntarily undertakes to provide services related to the safety or protection of others. *See Wright v. PRG Real Estate Mgmt., Inc.,* 426 S.C. 202, 212–17, 826 S.E.2d 285, 291–94 (2019). Whether such a

17

duty arises depends on the particular facts of the case and may present a mixed question of law and fact for the factfinder where the scope of the undertaking is disputed. *Id.* Consistent with this principle, a property manager or landlord who undertakes to provide security or safety measures may be liable if the undertaking is performed negligently. *See* Restatement (Second) of Torts § 323.

Coastal Management argues that the Management Agreement limited its authority and placed responsibility for major repairs and capital projects with the HOA Board. (DE 41-1 at 2–4; DE 41 at 2–3.) The record reflects that the Board retained authority to approve structural repairs and capital expenditures, including the timing of stairway replacement. (DE 41-1 at 3–4; DE 41-4 at 9, Stanley 30(b)(6) Dep. 113:14–18.) Coastal Management emphasizes that the Management Agreement required Board authorization for repairs exceeding $5,000 and argues that it, therefore, lacked authority to replace or substantially repair the stairway. (DE 41-1 at 3–4; DE 41-4 at 9, Stanley 30(b)(6) Dep. 113:14–18.) But the agreement also contains provisions permitting Coastal Management to take action in circumstances involving "manifest danger to persons or property," and the record contains testimony that Coastal Management retained authority to take interim safety measures—such as restricting access to a hazardous area—pending further direction from the Board. (DE 41-1 at 3–4; DE 44-2 at 3, Harm Dep. 129:1–12.)

The summary judgment record also contains evidence that Coastal Management performed operational functions relating to the maintenance of the property's common elements. The Management Agreement assigned Coastal

18

Management responsibilities for coordinating day-to-day maintenance and property operations. The agreement also included a provision allowing Coastal Management to take action without prior Board approval in circumstances involving "manifest danger to persons or property." (DE 44 at 2, 4.) In addition, Coastal Management employed the on-site maintenance individual, who served as the Board's primary point of observation regarding property conditions and communicated maintenance concerns to Coastal Management and the Board. (*Id.* at 7.)

Viewed in the light most favorable to Plaintiffs, this evidence could support a finding that Coastal Management exercised at least some degree of operational control over the monitoring and reporting of maintenance issues affecting the common areas, including the stairways. Although the HOA retained ultimate authority over major structural decisions, the record does not establish as a matter of law that Coastal Management's role was purely ministerial or that it could not identify hazardous conditions and escalate those concerns to the Board.

Under *Wright*, duties may arise not only from ownership but also from control or the voluntary undertaking of responsibilities affecting the safety of others. On the present record, a reasonable jury could conclude that Coastal Management's contractual and operational role included responsibilities related to identifying and communicating potentially dangerous conditions affecting the property's common elements.

Accordingly, Coastal Management has not shown that it owed no duty to Plaintiffs as a matter of law.

19

### 2.     Notice and Causation

Coastal Management next argues that the record contains no evidence that it had actual or constructive notice of a condition posing a risk of collapse. (DE 41 at 9–11.) Coastal Management emphasizes that none of the engineers who previously inspected the property warned of an imminent risk of collapse for the stairway. (DE 41-2 at 7, 10, 13–14, Donohue Dep. 32:1–18; 51:1–3; 91:21–92:1.) Plaintiffs respond that proof of an imminent collapse warning is not required under South Carolina negligence law, which focuses on whether a defendant knew or should have known of a dangerous condition requiring reasonable precautions. (DE 44 at 18.)

Plaintiffs rely on much of the same evidence discussed in connection with the HOA's motion, including engineering reports identifying deterioration, reserve planning documents reflecting the aging condition of the stairways, and testimony regarding visible deformation or bowing in the structure before the collapse. Plaintiffs contend that, given Coastal Management's role in coordinating maintenance and communicating with both engineers and the HOA Board, Coastal either knew or should have known that the stairway required additional inspection or safety measures. (DE 44 at 16–19; DE 44-4 at 17–18, Stanley 30(b)(6) Dep. 120:2–121:1; DE 44-2 at 3–4, Harm Dep. 129:1–130:14.)

Because Coastal Management served as the HOA's property manager and acted as an intermediary between engineers, contractors, and the Board, a reasonable jury could conclude that information regarding the stairway's deteriorating condition

was communicated to, or reasonably should have been known by, Coastal Management in the course of performing its operational responsibilities.

The record reflects competing interpretations of the information available to Coastal Management before the incident. Coastal Management maintains that the available engineering assessments did not indicate an imminent failure and that it reasonably relied on those professional evaluations. Plaintiffs argue that the accumulation of information about the structural deterioration should have prompted additional investigation or escalation of safety concerns.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party and refrain from weighing competing inferences. When so viewed, the record does not permit the Court to conclude as a matter of law that Coastal Management lacked notice of conditions that might reasonably have warranted further investigation or reporting to the HOA Board.

Under South Carolina law, proximate cause—including the element of foreseeability—ordinarily presents a question of fact for the jury unless the evidence supports only one reasonable inference. *See Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 147–48, 638 S.E.2d 650, 663 (2006). Here, the parties dispute whether earlier identification or escalation of the stairway's deteriorating condition could have resulted in additional inspection, repair, or temporary closure of the stairway before the collapse occurred. Resolving that dispute would require factual determinations regarding the scope of Coastal Management's authority, the

21

information available to it, and the steps that reasonably could have been taken in response.

Because the record permits competing inferences regarding the scope of Coastal Management's operational responsibilities, its knowledge of the stairway's condition, and the reasonableness of its response to the information available to it, Coastal Management has not shown that it is entitled to judgment as a matter of law.

## C.     Conclusion of Discussion

In sum, the summary judgment record contains genuine disputes of material fact regarding:

- the scope of Coastal Management's contractual and operational responsibilities for monitoring and reporting safety concerns affecting the common areas;

- whether Defendants had actual or constructive notice of the stairway's deteriorating condition;

- whether Defendants exercised reasonable care in responding to the information available to them; and

- whether any failure to act was a proximate cause of Plaintiffs' injuries.

These issues involve factual determinations properly reserved for jury resolution. Accordingly, neither Sea Cabin nor Coastal Management has demonstrated that it is entitled to judgment as a matter of law.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Coastal Association Management, Inc.'s Motion for Summary Judgment (DE 41) is **DENIED**, and Defendant Sea Cabin on the Ocean IV Homeowners Association, Inc.'s Motion for Summary Judgment (DE 42) is also **DENIED**.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
March 12, 2026